IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS MILLER,                          :

     Plaintiff,                        :

v.                                      :          Civil Action No. GLR-17-2349

MARYLAND DEPARTMENT OF                  :
NATURAL RESOURCES,
                                        :
     Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Maryland Department of Natural Resources' ("DNR") Motion to Dismiss and/or for Summary Judgment (ECF No. 9). Also pending before the Court are Plaintiff Thomas Miller's Motion for Leave to Amend Complaint (ECF No. 14) and Motion for Leave to Amend Complaint and Docket the Third Amended Complaint (ECF No. 15). This employment discrimination action arises from DNR's September 20, 2016 termination of Miller's probationary employment. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant DNR's Motion and deny Miller's Motions.

## I.    BACKGROUND[1]

On March 30, 2016, Miller began his employment with DNR as a police recruit. (1st Am. Compl. ¶ 17, ECF No. 6). During close quarters training on May 23, 2016,

---

[1] Unless otherwise noted, the Court takes the following facts from Miller's First Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Miller sustained a neck injury that "caused him difficulties with lifting, running, sleeping, driving and pulling and turning his neck." (Id. ¶¶ 19–20). He immediately notified his supervisors and "made multiple requests for accommodation to Cpl. Hunt and Cpl. Beckwith." (Id. ¶¶ 21–22).

On June 15, 2016, Miller met with a Head and Neck Specialist who ordered an MRI and "cleared Miller for full duty despite his injuries." (Id. ¶ 23). On June 28, 2016, Miller had an MRI. (Id. ¶ 24). Due to Miller's "background in pathology," he identified a "cervical herniation" on the MRI. (Id. ¶ 25). The next day, Miller notified Cpl. Beckwith and Cpl. Hunt about the herniation.[2] (Id. ¶ 26).

On June 30, 2016, based on Miller's injury, the Head and Neck Specialist ordered "restricted upper body physical training (lifting restriction) for [thirty] days, with the expectation that he would return to full duty after the [thirty]-day period." (Id. ¶ 29). That same day, Miller received a "satisfactory" ninety-day evaluation rating from Sgt. Jackson.[3] (Id. ¶ 27). At an unspecified point in time, Miller was taken off of full duty. (See id. ¶ 55).

On July 21, 2016, Miller was scheduled for a workability examination. (Id. ¶ 46). The examiner requested a copy of his MRI and asked Miller whether he believed that he could fulfill the duties of an Natural Resources Police officer. (Id. ¶¶ 47, 49). Miller responded that he could. (Id. ¶ 48). On July 26, 2016, Miller received clearance to return to full duty. (Id. ¶ 55). His "managers" then ordered him "not to possess or use any

_____

[2] The First Amended Complaint does not state Cpl. Beckwith's or Cpl. Hunt's first name.

[3] The First Amended Complaint does not state Sgt. Jackson's first name.

prescriptions." (Id. ¶ 56). About a month prior, Cpl. Hunt and Lt. Marconi[4] expressed concerns that Miller was abusing his prescription medications in order to remain operational during training. (Id. ¶ 30). Miller denied this accusation and offered to take a drug test in order to disprove it, but his supervisors declined Miller's offer. (Id. ¶¶ 32, 33).

In late July 2016, several of Miller's classmates were caught in possession of tobacco products on the campus, in violation of DNR policy. (Id. ¶ 61). As a result, the entire class was punished with a two-week disciplinary program called "Hell Week," which included "extra-difficult exercises." (Id. ¶¶ 62, 64). Miller "sought the accommodation of alternate shoulder exercises" to "avoid re-aggravating his injury."[5] (Id. ¶ 67). He received no response. (Id. ¶ 69).

On August 8, 2016, Miller passed the Maryland Police Fitness test. (Id. ¶ 72). The next day, the recruits were required to take a test on natural resources law. (Id. ¶ 78). This was an open computer test, and the recruits were authorized to use two websites in order to answer the questions. (Id. ¶¶ 82, 84–86). Halfway through the test, the instructor discovered that Miller was using an unauthorized website. (Id. ¶¶ 83–84). The instructor then took Miller's pencil and marked the question wrong. (Id. ¶ 83). Miller claimed that he did not see the two websites that were written on the board, nor did he hear the proctor's instructions about which ones were permitted. (Id. ¶¶ 85, 111). He admitted to the instructor that he had used unauthorized sites to answer some of the other

---

[4] The First Amended Complaint does not state Lt. Marconi's first name.
[5] Miller does not state to whom he directed his request for accommodation.

questions on the test and offered to mark those wrong as well.  (Id. ¶¶ 87–88).  The instructor agreed.  (Id. ¶ 89).

On August 10, 2016, Miller asked to use his prescriptions but did not receive a response.[6]  (Id. ¶¶ 91–92).  On August 11, 2016, Lt. Marconi informed Miller that he was being placed back on full medical restriction and was forbidden from participating in any physical training.  (Id. ¶¶ 94–97, 100).  Lt. Marconi informed Miller that he was being referred to a state doctor for another workability exam.  (Id. ¶ 96).  Lt. Marconi also informed Miller that he was being placed on a three-week disciplinary probation for "cheating and integrity issues."  (Id. ¶ 101).  During the probation period, a disciplinary review board would meet to determine Miller's punishment.  (Id. ¶¶ 101, 103).[7]  On August 18, 2016, "the disability panel" recommended that Miller be placed on restricted duty.  (Id. ¶ 118).  On August 31, 2016, Miller completed his disciplinary probation but was ordered to remain out of uniform.  (Id. ¶¶ 123–24).

On September 1, 2016, Miller told his class that he had herniated discs, was prescribed epidural steroids, and might need surgery in the near future.  (Id. ¶ 125).  The next day, he informed Cpl. Beckwith about his herniated discs.  (Id. ¶ 126).

On September 6, 2016, DNR notified Miller that he was being officially terminated on September 20, 2016 for cheating and, in the meantime, was being placed on administrative leave.  (Id. ¶¶ 127–28).  On October 31, 2016, Miller filed a Charge

---

[6] Miller does not state to whom he directed his request to access his prescriptions.

[7] Miller alleges that DNR never convened a disciplinary review board.  (1st Am. Compl. ¶ 115).  DNR's extra-pleading materials demonstrate that DNR did indeed convene a disciplinary review board.  (See Def.'s Mot. Dismiss Summ. J. Ex. 8, ECF No. 9-11).

with the EEOC (the "EEOC Charge"). (Id. ¶ 11). On May 15, 2017, the EEOC dismissed Miller's EEOC Charge and informed him of his right to sue. (Id. ¶ 12).

On August 15, 2017, Miller sued DNR. (ECF No. 1). On August 17, 2017, before he served DNR, Miller filed a First Amended Complaint. (ECF No. 6). In his five-count First Amended Complaint, Miller alleges violations of the Americans with Disabilities Act of 2008 (the "ADA"), 42 U.S.C. §§ 12101 et seq. (2018), the Rehabilitation Act, 29 U.S.C. § 701 et seq. (2018), and the Maryland Fair Employment Practices Act (the "FEPA"), Md. Code Ann., State Gov't §§ 20-1001 et seq. (West 2018) for: (1) failure to accommodate (Count I); (2) a hostile work environment (Count II);[8] (3) unlawful termination based on Miller's alleged disabilities (Count III); (4) discriminatory termination based on perceived disability (Count IV); and (5) wrongful termination based on protected activity (Count V). (1st Am. Compl. ¶¶ 138–62).

On November 21, 2017, DNR filed its Motion to Dismiss and/or for Summary Judgment. (ECF No. 9). Miller filed an Opposition on December 26, 2017. (ECF No. 16). On January 23, 2018, DNR filed a Reply. (ECF No. 20).

On December 22, 2017, before filing his Opposition to DNR's Motion, Miller filed Plaintiff Thomas Miller's Motion for Leave to Amend Complaint (ECF No. 14). Four days later, on December 26, 2017, Miller filed Plaintiff Thomas Miller's Motion for Leave to Amend Complaint and Docket the Third Amended Complaint. (ECF No. 15).

---

[8] In his Opposition, Miller concedes that he does not have a viable hostile work environment claim and that Maryland and its agencies have not waived sovereign immunity under the ADA. (Pl.'s Opp'n Def.'s Mot. Dismiss ["Pl.'s Opp'n"] at 50, 57, ECF No. 16). Accordingly, the Court will dismiss Count II and Miller's ADA claims.

DNR filed a combined Opposition on January 9, 2018.  (ECF No. 19).  On February 6, 2018, Miller filed a combined Reply.  (ECF No. 21).

## II.    DISCUSSION

### A.    <u>DNR's Motion to Dismiss and/or for Summary Judgment</u>

#### 1.    **Conversion of DNR's Motion**

DNR styles its Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  <u>See</u> <u>Kensington Vol. Fire Dep't, Inc.</u> <u>v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012).  This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  <u>Wells-Bey v.</u> <u>Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  <u>See</u> <u>Greater Balt. Ctr. for Pregnancy</u> <u>Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013).  When the movant

6

expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of

Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, Miller contends that summary judgment is premature because he needs more discovery to sufficiently respond to DNR's Motion. Indeed, this case is in its preliminary stages, and the Court has yet to enter a scheduling order. See Local Rule 104.4 (D.Md. 2016) (explaining that "discovery shall not commence . . . until a scheduling order is entered"). In addition, Miller presents a Rule 56(d) affidavit in which he requests additional time to conduct discovery regarding DNR's motive for terminating Miller's employment. Specifically, Miller requests "the opportunity to review Defendant's internal correspondence, and to examine [DNR]'s key witnesses at deposition." (Goldsmith Decl. ¶ 6, ECF No. 16-2).

DNR captioned its Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration, satisfying the notice requirement. See Moret, 381 F.Supp.2d at 464. But discovery has not commenced yet, and Miller requests discovery in a Rule 56(d) affidavit. Miller also specifies the facts that he seeks to discover, and those facts would create a genuine dispute of material fact. See Strag, 55 F.3d at 953. As a result, the Court construes DNR's Motion as a motion to dismiss.

### 2. 12(b)(6) Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint

fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

In the employment discrimination context, a plaintiff is not required to "plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir.) (quoting McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015)), cert. denied sub nom. City of Greensboro, N.C. v. BNT Ad Agency, LLC, 138 S.Ct. 558 (2017). Nevertheless, the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute" in compliance with Iqbal. Id. (quoting McCleary-Evans, 780 F.3d at 585).

### 3. Analysis

DNR advances two main arguments for dismissing Miller's First Amended Complaint: (1) Miller failed to exhaust administrative remedies; and (2) Miller fails to state a claim upon which relief can be granted.[9] The Court agrees with DNR's second argument.

### a. Rehabilitation Act and FEPA

Miller brings claims for failure to accommodate, discriminatory termination, and retaliatory termination under the Rehabilitation Act and FEPA.[10] His failure to

---

[9] DNR also argues that it has not waived sovereign immunity for ADA claims. Because Miller concedes this point and the Court will dismiss his ADA claims, the Court declines to address this argument.

[10] The standards used to determine whether an employer has discriminated under the Rehabilitation Act are the same standards applied under the ADA. Hooven–Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001); see also 29 U.S.C. § 791(f) (2018); 29 C.F.R. § 1614.203(b) (2017). Likewise, FEPA is the "Maryland State analogue to the ADA." George v. Md. Dep't of Corr. Serv. Div. of Pretrial Det. Serv., No. WMN-14-2808, 2015 WL 847416, at *4 n.5 (D. Md. Feb. 25, 2015), aff'd, 615 F.App'x 164 (4th Cir. 2015). The Court will, therefore, use its Rehabilitation Act analysis as its analysis

accommodate and discriminatory discharge claims require that Miller first adequately allege that he is a "qualified individual with a disability." See, e.g., Shin v. Univ. of Md. Med. Sys. Corp., 369 F.App'x 472, 479 (4th Cir. 2010) ("For both wrongful termination and the failure to provide reasonable accommodation, a plaintiff must first establish that he is a 'qualified individual with a disability' under the ADA."). Accordingly, the Court addresses the threshold question of whether Miller is a "qualified individual with a disability," and then addresses his retaliatory discharge claim.

### i. Failure to Accommodate and Discriminatory Discharge

The Rehabilitation Act adopts the ADA's definition of "disability," see 29 U.S.C § 705(9)(B) (2018), including the amendments to the definition in the ADA Amendments Act of 2008 ("ADAAA"). Brady v. Bd. of Educ. of Prince George's Cty., 222 F.Supp.3d 459, 468 (D.Md. 2016), aff'd, 707 F.App'x 780 (4th Cir. 2018). The ADAAA defines a disability as: "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014) (citing 42 U.S.C. § 12102(1)).

Here, Miller alleges that he has an actual disability and was regarded as having a disability.

---

for Miller's FEPA claims in Count I (failure to accommodate), Count III (disability discrimination), Count IV (disability discrimination – regarded as disabled), and Count V (disability retaliation).

### aa.    Actual Disability

With regard to an actual disability, major life activities include, among other things, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  Major life activities also include "the operation of a major bodily function, including but not limited to, . . . neurological . . . functions."  § 12102(2)(B).  A temporary impairment generally does not qualify as a disability because a condition that will improve in a relatively short period of time does not meet the "substantially limits" requirement.  Lewis v. Balt. City Bd. of Sch. Comm'rs., 187 F.Supp. 3d 588, 598 (D.Md. 2016) (citing Pollard v. High's of Balt., Inc., 281 F.3d 462, 468 (4th Cir. 2002)).  A short-term impairment may, however, qualify as a disability is it is "sufficiently severe."  Summers, 740 F.3d at 330 (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app.)).

DNR asserts that Miller fails to adequately allege that he is a qualified individual with a disability.  Miller counters that he sufficiently pleads that he has a disability that substantially impaired both major life activities and a major bodily function—his neurological system.  The Court disagrees with Miller.

In this case, Miller appears to allege two disabilities: a "neck injury" that resulted in a "cervical herniation"; and "herniated discs."[11]  (1st Am. Compl. ¶¶ 19, 25, 125).

---

[11] It is unclear from the First Amended Complaint whether Miller alleges a single disability or separate disabilities.  Miller clarifies in his Opposition to DNR's Motion that he was suffering from a "Herniated Thoracic Disc" and "Cervical Radiculopathy"—"a compressed nerve root in the neck (cervical spine)." (Pl.'s Opp'n at 25–26).

With regard to the first purported disability, Miller pleads that on May 23, 2016, he sustained a neck injury that "caused him difficulties with lifting, running, sleeping, driving and pulling and turning his neck." (Id. ¶¶ 19–20).  Neither party disputes that "lifting" and "sleeping" are major life activities.  Of import here, however, is that Miller merely pleads that his neck injury "caused him difficulties," (id. ¶ 20), not that it substantially impaired any of the major life activities that he lists.  Such allegations are insufficient to state a plausible claim that Miller has a disability.  See Quarles v. Md. Dep't of Human Res., No. MJG-13-3553, 2014 WL 6941336, at *4 (D.Md. Dec. 5, 2014) (concluding that the plaintiff failed to plausibly allege that she was disabled where she pled that her diabetes "limited her ability to move freely, walk steps, or travel from building to building").  Nor does Miller allege any factual matter that would make it plausible that the neck injury substantially impaired a major life activity.

Additionally, Miller alleges that during "Hell Week" in late-July 2016, he requested alternate exercises in order to "avoid re-aggravating his injury," (id. ¶¶ 61–62, 64, 67), and that he passed the DNR's fitness test on August 8, 2016, (id. ¶ 72).  Miller's neck injury, therefore, was at best a short-term impairment that was not sufficiently severe to qualify as a disability.  See Summers, 740 F.3d at 330 (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app.)); Lewis, 187 F.Supp. 3d at 598 (citing Pollard, 281 F.3d at 468).

Further, Miller states that on June 30, 2016, the Head and Neck Specialist ordered a thirty-day upper body lifting restriction "with the expectation that he would return to

---

Accordingly, the Court construes the neck injury and cervical herniation as one alleged disability, and the herniated discs as another.

full duty after the [thirty]-day period." (1st Am. Compl. ¶ 29). On July 26, 2016, Miller "received clearance to return to full duty." (Id. ¶ 55). A thirty-day upper body lifting restriction is insufficient to establish that a plaintiff is substantially limited in the major life activity of lifting. Cf. 29 CFR § 1630.2(j)(1)(ix) (app.) ("[I]f an individual has a back impairment that results in a 20–pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability.").

Thus, Miller fails to plausibly allege that his neck injury and cervical herniation constitute a disability.

Likewise, Miller's allegations that he had herniated discs fail to sufficiently state that he has a disability. Miller does not allege that his herniated discs substantially impaired a major life activity. He only connects his "difficulties" with "lifting, running, sleeping, driving and pulling and turning his neck" to his neck injury and possibly his cervical herniation. (1st Am. Compl. ¶ 20). To be sure, Miller pleads that because of his herniated discs, he "might need surgery in the near future" and that he was "prescribed epidural steroids." (Id. ¶ 125). But these allegations fail to state, even in a conclusory manner, that Miller's herniated discs substantially impaired a major life activity.

Nevertheless, in his Opposition, Miller asserts that his "[h]erniated [t]horacic [d]iscs" and "[c]ervical [r]adiculopathy" substantially impair his neurological system—a

major bodily function.[12] ("Pl.'s Opp'n" at 28–29). But nowhere in the First Amended Complaint appear allegations related to Miller's neurological system, let alone allegations that connect the function of his neurological system to his purported impairments. Nor are there allegations that Miller suffers from cervical radiculopathy. As a result, Miller fails to adequately allege that he has a disability that substantially impairs his neurological system.

In sum, the Court concludes that Miller fails to plausibly plead that he has an actual disability. The Court next addresses the "regarded-as" disability prong.

### bb. Regarded-As Disabled

DNR asserts that Miller fails to plead with specificity the duration of his purported impairments. As a result, DNR contends, Miller fails to plausibly allege that he is disabled. Miller counters that allegations of an actual impairment or a "general awareness" that he suffered from a disability are sufficient to allege that he was regarded-as disabled. (Pl.'s Opp'n at 47) (quoting Fierce v. Burwell, 101 F.Supp.3d 543, 551 N.8 (D.Md. 2015)). Miller's argument misses the mark.

To establish that he was regarded as having a disability, a plaintiff must allege that his employer subjected him to discrimination "because of a . . . perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." LaPier v. Prince George's Cty., No. 10-CV-2851 AW, 2011 WL 4501372, at *5 (D.Md. Sept. 27, 2011) (quoting § 12102(3)(A)). The "regarded as" definition of disability does not

---

[12] In making this argument, Miller also cites to his Declaration (ECF No. 16-1), which is attached to his Opposition. Because the Court construes DNR's Motion as a motion to dismiss, it does not consider Miller's Declaration.

apply, however, to "impairments that are transitory and minor." Id. (quoting § 12103(3)(B)). "Transitory impairments are those with 'an actual or expected duration of 6 months or less.'" Id. (quoting § 12103(3)(B)). In LaPier, for example, the plaintiff's impairment had "an actual or expected duration of six months or less." Id. The Court concluded that the plaintiff failed to state that he had a perceived disability because he "failed to allege that his condition was episodic, in remission, or otherwise expected to last for a significant length of time." Id. As a result, the plaintiff failed to state a plausible disability claim. Id.

Here, Miller's First Amended Complaint similarly fails to allege that he was regarded as disabled. With regard to Miller's neck injury and cervical herniation, on June 30, 2016, the Head and Neck Specialist "ordered restricted upper body physical training (lifting restriction) for [thirty] days with the expectation that he would return to full duty afterwards." (1st Am. Compl. ¶ 29). On July 26, 2016, Miller received clearance to return to full duty. (Id. ¶ 55). Then, on August 1, 2016, Miller requested alternate shoulder exercises to "avoid re-aggravating his injury." (Id. ¶ 67). In other words, Miller's condition lasted for less than a month. And the First Amended Complaint does not contain any other factual allegations related to the actual or expected duration of Miller's condition. Miller, therefore, fails to allege that his neck injury and cervical herniation had an actual or expected duration of more than six months. See LaPier, 2011 WL 4501372, at *5.

Similarly, as to his herniated discs, Miller informed Cpl. Beckwith about them on September 2, 2016, and Miller said that he "might need surgery in the future." (1st Am.

Compl. ¶ 125). Miller does not, however, plead that he actually needed surgery or an actual or projected amount of time as to how long he expected his condition to last. Thus, as a matter of law, his impairment is considered transitory and does not qualify as a "regarded-as" disability. See LaPier, 2011 WL 4501372, at *5.

In sum, the Court concludes that Miller fails to allege that he was actually disabled or that DNR regarded him as disabled. Accordingly, the Court will grant DNR's Motion as to Counts I, III, and IV.

### i.    Retaliation

Miller alleges that DNR terminated his employment because he requested accommodations for his purported disabilities.

"Although the Rehabilitation Act does not have a specific retaliation provision, it incorporates the remedies applicable under the Americans with Disabilities Act including 42 U.S.C. § 12203(a), which makes it unlawful to retaliate against individuals for making a charge, testifying, assisting, or participating in an investigation, proceeding or hearing regarding charges of disability discrimination." Dones v. Donahoe, 987 F.Supp.2d 659, 672 n.4 (D.Md. 2013) (citing 29 U.S.C. § 794a). To establish a prima facie case of retaliation under the Rehabilitation Act, the plaintiff must allege that: (1) "he engaged in a protected activity"; (2) "his employer acted adversely against him"; and (3) "the protected activity was causally connected to the adverse action." Id. at 671.

DNR does not dispute that Miller's requests for accommodation are a protected activity or that Miller's termination was an adverse action. DNR, instead, contends that Miller fails to adequately allege a causal connection between his requests for

accommodation and DNR terminating his employment. The Court agrees for at least two reasons.

First, to demonstrate a causal connection between the protected activity and the adverse employment action, a plaintiff must establish "but-for" causation. See Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 235–36 (4th Cir. 2016) (holding that "but-for" causation applies to ADA claims); Staley v. Gruenberg, 575 F.App'x 153, 156 (4th Cir. 2014) (applying "but-for" causation to plaintiff's retaliation claims under the ADA, Rehabilitation Act, and Title VII); Brady, 222 F.Supp.3d at 474 (applying "but-for" causation standard to plaintiff's retaliation claims under the Rehabilitation Act); see also Palmquist v. Shinseki, 689 F.3d 66, 77 (1st Cir. 2012) (holding that "but-for" causation standard applies to retaliation claims under the Rehabilitation Act).

Miller contends that the temporal proximity between his requests for accommodation starting in May 2016 and ending on August 10, 2016 and DNR's decision to terminate his employment on August 12, 2016—a two-day gap—establish causation. Even assuming that DNR decided to terminate Miller's employment on August 12, 2016,[13] "[t]emporal proximity alone is insufficient to establish the third element of causation." Brady, 222 F.Supp.3d at 475 (D.Md. 2016) (quoting Smith v. Strayer Univ. Corp., 79 F.Supp.3d 591, 605 (E.D.Va. 2015)). Miller, therefore, cannot

---

[13] In his Opposition, Miller contends, based on an Exhibit to DNR's Motion, that DNR decided to terminate Miller's employment on August 12, 2016. (Pl.'s Opp'n at 51). The First Amended Complaint states that Miller was notified that he was being terminated on September 6, 2016. (1st Am. Compl. ¶ 127).

establish causation based on the two-day gap between his last purported request for accommodation and the decision to terminate his employment.

Second, the employer's knowledge that the employee engaged in a protected activity is "absolutely necessary to establish the third element of the prima facie case." Wisz v. Wells Fargo, No. GLR-12-2957, 2014 WL 3051320, at *6 (D.Md. July 2, 2014) (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998)). In this case, Miller does not allege that Cpl. Beckwith, Cpl. Hunt, or Lt. Marconi, the supervisors who were aware of Miller's requests for accommodation, was involved in the decision to terminate his employment. Indeed, Miller does not even allege who was involved—he simply pleads that an unnamed "instructor" observed Miller cheating on the test, "Internal Affairs" conducted an investigative interview, and he "was notified that he was being terminated." (1st Am. Compl. ¶¶ 83–84, 88–90, 119, 127). Absent factual allegations that make it plausible that those who decided to terminate Miller's employment were aware he had engaged in protected activity, Miller cannot establish the requisite causal connection.

Thus, the Court concludes that Miller fails to adequately allege a prima facie claim of retaliation. Accordingly, the Court will grant DNR's Motion as to Count V.

**B.**     **Miller's Motions for Leave to Amend**

There is a "federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (quoting Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009)). To satisfy this policy, the court

gives a plaintiff "every opportunity to cure formal defects in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading." Ostrzenski v. Seigel, 177 F.3d 245, 253 (4th Cir. 1999) (citation omitted). The court only denies leave to amend a complaint when "it appears to a certainty that plaintiff cannot state a claim." Id. (citation omitted). Indeed, "[t]he better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." Id.

Consonant with the federal policy in favor of resolving cases on their merits, Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Although the federal rules favor granting leave to amend, the decision lies within the sound discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va., 985 F.2d 164, 167–68 (4th Cir.1993) (citing Nat'l Bank v. Pearson, 863 F.2d 322, 327 (4th Cir. 1988)). Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards, 178 F.3d at 242).

DNR asserts that granting Miller leave to amend would be prejudicial and futile.[14] As to futility, DNR contends that it has presented evidence of its legitimate

_____

[14] DNR also argues that the Court should deny Miller's Motions because of undue delay in amending his pleadings. Undue delay is not, however, part of the legal standard

nondiscriminatory reason for terminating Miller, and Miller has provided no evidence to the contrary. Miller, unsurprisingly, maintains that his amendments are not prejudicial or futile. At bottom, the Court agrees that Miller's amendments are futile even though it does not consider DNR's reason for terminating Miller.

Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510 (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)); see TFFI Corp. v. Williams, No. DKC 13-1809, 2015 WL 5008708, at *2 (D.Md. Aug. 20, 2015) ("Although the viability of Plaintiff's claims will be tested by the anticipated dispositive motions, Plaintiff's motion for leave to amend alleges enough plausible facts against the remaining defendants to not be futile.").

In his Motion for Leave to Amend Complaint, Miller requests leave from the Court to add allegations that were part of Miller's EEOC Charge and Questionnaire to demonstrate that he exhausted administrative remedies. He also seeks to amend citations to § 501 of the Rehabilitation Act to § 504 and remove references to the ADA. As discussed above, however, the Court will grant DNR's Motion because Miller fails to state a claim under the Rehabilitation Act and FEPA, not because he failed to exhaust administrative remedies, making Miller's requested amendment futile. In addition,

---

for assessing whether a court should grant leave to amend. Accordingly, the Court does not consider this argument.

notwithstanding Miller's citation to the incorrect section of the Rehabilitation Act, the Court construed Miller's claims as brought under § 504, rendering the requested amendment moot. Further, as the Court noted previously, Miller conceded in his Opposition to DNR's Motion that DNR has sovereign immunity for claims under the ADA. As a result, the Court will dismiss Miller's ADA claims. In short, Miller's proposed Second Amended Complaint is futile.

In his Motion for Leave to Amend Complaint and Docket the Third Amended Complaint, Miller seeks leave of the Court to clarify that his herniated cervical disc substantially limited a major bodily function—his neurological system.[15] Specifically, Miller pleads that his "neurological system was substantially limited by pain from the injury" that "[t]he impairment substantially limited his neurological function . . . through pain," and adds references to "pain" and his "neurologic/pain condition." (3d Am. Compl. ¶¶ 67–68, 87, 200, 117, ECF No. 15-2). Miller's conclusory statements are devoid of factual allegations regarding the specific pain the condition caused and how this pain impaired the function of his neurological system. Put another way, Miller fails to allege facts that satisfy the major bodily function element of a disability claim. See Woods, 855 F.3d at 648 (quoting McCleary-Evans, 780 F.3d at 585). Miller, therefore, fails to plausibly allege that he has a disability that substantially limits his neurological

---

[15] Miller also requests leave of the Court to strike Count II for a hostile work environment from the First Amended Complaint. As discussed supra, because Miller concedes that he does not have a hostile work environment claim, the Court will dismiss Count II.

system.  See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  As a result, Miller's proposed amendment is futile.

Further, Miller's proposed amendment would not cure the other deficiencies in Miller's First Amended Complaint identified above, namely, that he fails to adequately allege that his purported disability substantially limits a major life activity, that he was regarded-as disabled, and that a causal connection exists between his alleged disabilities and his termination.

In sum, the Court concludes that Miller's proposed amendments to his First Amended Complaint are futile.  Accordingly, the Court will deny Miller's Motions.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant DNR's Motion to Dismiss and/or for Summary Judgment (ECF No. 9) and deny Miller's Motion for Leave to Amend Complaint (ECF No. 14) and Motion for Leave to Amend Complaint and Docket the Third Amended Complaint (ECF No. 15).  A separate order follows.

Entered this 26th day of September, 2018

_____/s/_____
George L. Russell, III
United States District Judge